UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

```
                               :
JAHEEM SNYPE,                  :
        Plaintiff,            :
                               :  Civil No. 3:19-cv-505 (AWT)
     v.                        :
                               :
SCOTT ERFE, et al.,            :
        Defendants.           :
                               :
```

## INITIAL REVIEW ORDER

The plaintiff, Jaheem Snype, who is currently incarcerated
at Garner Correctional Institution in Newtown, Connecticut,
filed this action pro se, pursuant to 42 U.S.C. § 1983.  The
plaintiff lists four defendants in his Complaint, Warden Scott
Erfe, Captain Lewis, Correctional Officer Cipolli, and
Correctional Officer Cocchiola.  All defendants work at Cheshire
Correctional Institution.  The plaintiff asserts Eighth
Amendment claims for deliberate indifference to safety, failure
to protect him from harm and delay of adequate medical care.  He
seeks damages as well as declaratory relief.  The Complaint was
received on April 4, 2019, and the plaintiff was granted
permission to proceed in forma pauperis in this action on April
10, 2019.

Under section 1915A of title 28 of the United States Code,
the court must review prisoner civil complaints and dismiss any

portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  Id.  This requirement applies both when the plaintiff pays the filing fee and when he proceeds in forma pauperis.  See Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam).

In reviewing a pro se complaint, the court must assume the truth of the allegations, and interpret them liberally to "raise the strongest arguments [they] suggest[]."  Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007).  Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. Bell Atlantic v. Twombly, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.  "'A document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"  Boykin v. KeyCorp., 521 F.3d 202, 214 (2d Cir. 2008) (quoting Erickson v. Pardus, 551 U.S. 89, 94 (2007)).  However, notwithstanding this liberal interpretation, a pro se complaint will not survive dismissal

unless the factual allegations meet the plausibility standard.

See, e.g., Fowlkes v. Ironworkers Local 40, 790 F.3d 378, 387

(2d Cir. 2015).

I.    **Factual Allegations**

Early in the morning of August 1, 2018, the plaintiff told

Captain Lewis, the unit manager of his housing unit, that he had

been threatened by another inmate.  Captain Lewis said that he

had to attend a meeting that morning but would look into the

matter after his meeting.

The plaintiff continued performing his job, which was

distributing commissary orders to inmates in his housing unit.

The inmate who had threatened the plaintiff called the plaintiff

to his cell door.  He called the plaintiff a "slow mental health

bastard" and asked for his commissary order.  Doc. #1, ¶ 18.

The plaintiff stated that the commissary had not sent an order

for him and directed the inmate to the commissary officer.  The

inmate used insulting language and threatened to knock the

plaintiff out when his door opened.  The plaintiff walked away.

The plaintiff cleaned the housing unit while the unit was

locked down.  This was standard practice during first shift on

Wednesdays.  After he finished, the plaintiff took a shower and

secured himself inside his cell.

Captain Lewis toured the housing unit around noon.  The

plaintiff banged on his door several times to get Captain

3

Lewis's attention.  Captain Lewis told the plaintiff that he had not forgotten about the plaintiff and was "coming around."  Id., ¶ 26.  Captain Lewis opened the plaintiff's door and asked him about the threat.  The plaintiff identified the inmate who had threatened him as Edgardo Perez in cell 16 and told Captain Lewis exactly what inmate Perez had said.

Captain Lewis laughed and told the plaintiff that he should not antagonize inmate Perez.  The plaintiff emphasized that the threat was serious and said that he would be in danger during the second shift because inmate Perez did not get his commissary order that morning.  Captain Lewis said he would look into the matter and told the plaintiff "You should know how to fight since you pissing people off."  Id., ¶ 34.  Laughing, Captain Lewis left the cell and housing unit.

Correctional Officers Cipolli and Cocchiola were assigned to the plaintiff's housing unit on second shift.  Officer Cipolli toured the unit counting all the inmates.  The plaintiff did not leave his cell for dinner.  After all the other inmates were secured, Officer Cipolli opened the plaintiff's cell door so he could do his job cleaning the unit after the meal.  When the plaintiff finished working, he took a shower and secured himself in his cell.

Later that evening, Officer Cipolli toured the housing unit.  The plaintiff knocked on his cell door when Officer

4

Cipolli walked past.  The plaintiff explained about the threat
from inmate Perez.  Officer Cipolli said, "You really stop me on
my tour for that?  Man, man up this is prison, if you didn't
commit a crime you wouldn't be here."  Id., ¶ 57.  Officer
Cipolli walked away and the plaintiff moved away from the cell
door.

At 7:45 p.m., Officers Cipolli and Cocchiola opened the
plaintiff's cell door for bottom tier recreation.  The plaintiff
used the phone to call his family.  After his fifteen-minute
call, the plaintiff and his friend sat and talked at a table
near the correctional officers' station.  Inmate Perez walked up
to the table and interrupted the conversation to call the
plaintiff names and complain about not receiving his commissary
order.  The plaintiff objected to the name-calling and asked
inmate Perez whether he had spoken to the commissary officer.
Inmate Perez again threatened the plaintiff.  The plaintiff's
friend tried to de-escalate the situation.  The plaintiff
remained quiet.

The plaintiff tried to get away from inmate Perez who had
been moving his hands in the plaintiff's face.  When the
plaintiff stood up, inmate Perez punched the plaintiff in the
face with a closed fist, splitting the plaintiff's lip.  The
plaintiff fell to the floor, hitting his head on the seat.
Officers Cipolli and Cocchiola watched the entire incident from

their seats in the control station and did nothing.  They did
not call a Code Blue as they are required to do whenever there
is an inmate-on-inmate attack.

The plaintiff got up and walked toward inmate Perez.  The
plaintiff's friend got between the inmates so they could not
fight.  Officers Cipolli and Cocchiola continued to watch and do
nothing.

The plaintiff returned to his cell and rinsed his mouth
with cold water.  He had a large lump on his head from hitting
the seat.

The following day, Captain Lewis walked into the housing
unit during the plaintiff's recreation period.  The plaintiff
was outside playing basketball.  Captain Lewis walked outside,
summoned the plaintiff and said he wanted to speak privately.
Captain Lewis commented that the plaintiff needed stitches on
his lip and began laughing.

The plaintiff accompanied Captain Lewis to the Captain's
office.  When Captain Lewis asked what had happened, the
plaintiff said that he had told Captain Lewis about it the day
before, but he had done nothing.  Captain Lewis attributed the
incident to the plaintiff's mood swings and attitude.  He
laughed again.

When the plaintiff asked if he could return to the housing
unit, Captain Lewis told him that he was going to segregation

6

for investigation of the incident.  To no avail, the plaintiff
complained that he did not fight and had already told Captain
Lewis about the inmate who attacked him.

Several officers escorted the plaintiff to segregation.
While there, the plaintiff requested medical attention for his
head and lip.  The plaintiff also had complained of pain and
asked Captain Lewis for medical attention.  Captain Lewis
directed the plaintiff to "write a request, that should teach
you a lesson."  Id., ¶ 110.  The plaintiff submitted a request
but was never seen by medical staff.

On August 6, 2018, the plaintiff was released from
segregation.  He returned to the same housing unit and cell.  On
the way back to the housing unit, the plaintiff stopped Warden
Erfe and spoke with him.  The plaintiff explained that he had
been assaulted by another inmate after informing Captain Lewis
and other officers about the threat and that Officers Cipolli
and Cocchiola watched the assault and did nothing.  Warden Erfe
took no action.  On August 17, 2018, the plaintiff was
transferred to a different correctional facility.

## II.  Analysis

The plaintiff asserts three claims.  First, he claims that
defendants Lewis, Cipolli, and Cocchiola failed to protect him
from harm in violation of the Eighth Amendment and negligently
failed to protect him from harm.  Second, the plaintiff claims

7

that Warden Erfe and Captain Lewis failed to properly supervise
their subordinates because they did not discipline Officers
Cipolli and Cocchiola.  Third, the plaintiff claims that all
defendants contributed to the delay in receiving medical care
for his injuries.

### A.    <u>Official Capacity Claims</u>

The plaintiff seeks damages from the defendants in their
individual and official capacities.  He also seeks a declaration
that the defendants violated the Eighth Amendment when they
failed to protect him from threatened harm.

The Eleventh Amendment bars claims for damages against
state officials in their official capacities unless the state
has waived this immunity or Congress has abrogated it.  <u>Kentucky
v. Graham</u>, 473 U.S. 159, 169 (1995).  Section 1983 does not
abrogate state sovereign immunity, <u>Quern v. Jordan</u>, 440 U.S.
332, 343 (1979), and the plaintiff has alleged no facts
suggesting that Connecticut has waived this immunity.
Accordingly, all claims for damages against the defendants in
their official capacities are dismissed pursuant to 28 U.S.C. §
1915A(b)(2).

The plaintiff seeks a declaration that the actions he
describes violated his rights.  Declaratory relief operates
prospectively.  It is intended to enable parties to adjudicate
claims before either party suffers significant damage.  <u>Orr v.</u>

Waterbury Police Dep't, No. 3:17-cv-788(VAB), 2018 WL 780218, at

*7 (D. Conn. Feb. 8, 2018) (citations omitted).  In Orr, the

court dismissed the request for declaratory relief because the

relief related only to past actions; the plaintiff had not

identified any legal issue that could be resolved by declaratory

relief.  Id.

The plaintiff seeks declaratory relief related to the

actions alleged in the complaint.  These actions occurred in

2018.  As he seeks declaratory relief relating to past actions,

his request is not cognizable[1] and is dismissed pursuant to 28

U.S.C. § 1915A(b)(1).

**B.     Failure to Protect/Deliberate Indifference to Safety**

The plaintiff claims that defendants Lewis, Cipolli, and

Cocchiola failed to protect him from harm in violation of the

Eighth Amendment and also negligently failed to protect him.

The court assumes that the second claim is a supplemental state

law tort claim.

To state a claim for failure to protect an inmate from

harm, or for deliberate indifference to inmate safety, the

---

[1] The court notes that if the plaintiff were to prevail on any of
his claims, a judgment in his favor would serve the same purpose as a
declaration that the defendants had violated his rights regarding that
claim. Thus, any request for declaratory relief is redundant. See U.S.
v. $2,350,000.00 in Lieu of One Parcel of Property Located at 895 Lake
Avenue Greenwich, Connecticut, 718 F. Supp. 2d 215, 229 n.7 (D. Conn.
2010) (noting that if property is not forfeited, receiver-claimants
would have been shown to be prevailing innocent owners and declaration
to that effect would be redundant).

plaintiff must show that the alleged conduct was sufficiently serious and that the defendant acted with a sufficiently culpable state of mind, that is, he acted maliciously and sadistically to cause the plaintiff harm.  See Orr v. Marquis, No. 3:18-CV-1908(MPS), 2019 WL 161504, at *3 (D. Conn. Jan. 10, 2019) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994)).  The defendant must have been aware of, and deliberately disregarded, an excessive risk to the plaintiff's health or safety.  Id. (citations omitted); Bridgewater v. Taylor, 698 F. Supp. 2d 351, 357 (S.D.N.Y. 2010) (explaining that defendants must be aware of facts supporting an inference that harm would occur and must actually draw that inference).  When evaluating a claim for failure to protect an inmate from harm or deliberate indifference to inmate safety, the court considers "the facts and circumstances of which the official was aware at the time he acted or failed to act."  Hartry v. County of Suffolk, 755 F. Supp. 2d 422, 436 (E.D.N.Y. 2010) (internal quotation marks and citation omitted).

The plaintiff alleges that he made Captain Lewis and Officers Cipolli and Cocchiola aware of the threat from inmate Perez, but they did not immediately investigate the incident or keep the inmates separated until an investigation had been done. Captain Lewis considered the matter amusing and defendants Cipolli and Cocchiola sat and watched the incident and did

10

nothing.   These allegations are sufficient to state a plausible

claim for failure to protect or deliberate indifference to

safety against all three defendants.

The plaintiff also asserts state law negligence claims

based on these same facts.  As state employees, the defendants

are immune from suit for damages based on negligent conduct

unless they acted recklessly, wantonly, or maliciously.  See

Conn. Gen. Stat. § 4-165 ("No state officer or employee shall be

personally liable for damage or injury, not wanton or reckless

or malicious, caused in the discharge of his duties or within

the scope of his employment.").  The allegation here that

Captain Lewis failed to immediately investigate the threat does

not rise to this level.  However, the allegation that defendants

Cipolli and Cocchiola watched the encounter and did nothing,

even though they were aware of the threat, could constitute

reckless conduct.  The state law negligence claim is dismissed

as to Captain Lewis only.

C.    **Supervisory Liability**

The plaintiff argues that Warden Erfe and Captain Lewis

failed to properly supervise their subordinates because they did

not discipline Officers Cipolli and Cocchiola.  To the extent

that the plaintiff seeks the discipline of the officers, he has

no right to that relief.  See S. v. D., 410 U.S. 614, 619 (1973)

("[A] private citizen lacks a judicially cognizable interest in

11

the prosecution or nonprosecution of another."); see also <u>Leeke</u>

<u>v. Timmerman</u>, 454 U.S. 83, 86-87 (1981) (finding inmates had no

constitutional claim based on magistrate's refusal to charge

guards with assault).  Thus, any request for discipline is

dismissed.  However, the plaintiff may state a claim for

improper supervision.

> To state a claim for supervisory liability, a
> plaintiff must establish that:
> (1)  The defendant participated directly in the
> alleged constitutional violation, (2) the defendant,
> after being informed of the constitutional violation
> through a report or appeal, failed to remedy the
> wrong, (3) the defendant created a policy or custom
> under which the unconstitutional practices occurred,
> or allowed the continuance of such a policy or custom,
> (4) the defendant was grossly negligent in supervising
> subordinates who committed the wrongful acts, or (5)
> the defendant exhibited deliberate indifference … by
> failing to act on information indicating that
> unconstitutional acts were occurring.

<u>Shaw v. Prindle</u>, 661 F. App'x 16, 18 (2d Cir. 2016) (quoting

<u>Colon v. Coughlin</u>, 58 F.3d 865, 873 (2d Cir. 1995)).  As the

plaintiff specifically titles this claim for relief as "Failure

to Supervise," the court considers this claim under the fourth

<u>Colon</u> factor.

To state a plausible claim, the plaintiff must do more than

allege that Warden Erfe and Captain Lewis had supervisory

authority.  See <u>Styles v. Goord</u>, 431 F. App'x 31, 33 (2d Cir.

2011) ("The mere fact that a defendant possesses supervisory

authority is insufficient to demonstrate liability for failure

to supervise under section 1983.").

The plaintiff alleges no facts regarding the level of daily supervision the warden exercises over correctional officers.  He alleges only that he reported the incident to the warden after the fact.  Although the plaintiff alleges that the warden took no action in response to his complaint, the plaintiff also alleges that he was transferred to a different correctional facility shortly thereafter.  Thus, it appears that Warden Erfe took some action, just not the action the plaintiff wanted, i.e., discipline of the officers involved.  The plaintiff's conclusory allegation is insufficient to state a plausible claim for supervisory liability against Warden Erfe.  See, e.g., Milner v. Mulligan, No. 3:17-cv-1341(SRU), 2017 WL 4678185, at *5 (D. Conn. Oct. 17, 2017) (dismissing claim for failure to supervise and discipline subordinates where plaintiff alleges no facts regarding level of daily supervision exercised by warden).

The plaintiff alleges that Captain Lewis was the unit manager and was present in the housing unit on a daily basis. The court considers the allegations against defendant Lewis sufficient to show daily supervision of the officers in the housing unit.  Thus, the plaintiff has sufficiently alleged a plausible claim for supervisory liability against Captain Lewis.

D.   **Delay in Medical Care**

The plaintiff contends that all defendants contributed to

13

the delay in him receiving medical care for his injuries.

The Eighth Amendment forbids deliberate indifference to prisoners' serious medical needs.  Spavone v. New York State Dep't of Corr. Servs., 719 F.3d 127, 138 (2d Cir. 2013).  To state a claim for deliberate indifference to a serious medical or mental health need, the plaintiff must show both that his need was serious, and that the defendant acted with a sufficiently culpable state of mind.  See Smith v. Carpenter, 316 F.3d 178, 184 (2d Cir. 2003) (citing Estelle v. Gamble, 492 U.S. 97, 104 (1976)).

There are both objective and subjective components to the deliberate indifference standard.  See Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994).  Objectively, the alleged deprivation must be "sufficiently serious."  Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The condition must produce death, degeneration or extreme pain.  See Hathaway v. Coughlin, 99 F.3d 550, 553 (2d Cir. 1996).  Subjectively, the defendant must have been actually aware of a substantial risk that the plaintiff would suffer serious harm as a result of his actions or inactions.  See Salahuddin, 467 F.3d at 279-80.

Prison guards may be deliberately indifferent to serious medical needs if they intentionally delay prisoner access to medical care.  See Estelle v. Gamble, 429 U.S. 97, 105 (1976) (deliberate indifference "is manifested by … prison guards in

14

intentionally denying or delaying access to medical care….").

Negligence that would support a claim for medical malpractice does not rise to the level of deliberate indifference and is not cognizable under section 1983. See id. Nor does a disagreement over the treatment provided show deliberate indifference. See Wright v. Rao, 622 F. App'x 46, 47 (2d Cir. 2015) (citing Chance v. Armstrong, 143 F.3d 698, 703 (2d Cir. 1998)).

The plaintiff alleges that he suffered a split lip that may have required stitches and a contusion on his head. It is not clear whether these injuries, in and of themselves, constitute a serious medical need. Courts considering similar injuries have held that a split lip, even one requiring stitches, and a bruise to the head are not serious medical needs. See, e.g., Goodwin v. Kennedy, No. CV 13-1774(SJF)(AKT), 2015 WL 1040663, at *12 (E.D.N.Y. Mar. 10, 2015) (citing cases holding that superficial lacerations, including "'split lip, which bled and became swollen … [and] needed stitches'" did not constitute serious medical need) (citation omitted); Rodriguez v. Mercado, NO. 00 CIV. 8588JSRFM, 2002 WL 1997885, at *8 (S.D.N.Y. Aug. 28, 2002) (inmate claiming to suffer bruised after striking head against wall with no loss of consciousness did not have serious medical need).

Here, however, the plaintiff's claim is for a delay in

15

medical treatment.  Thus, the court's focus is not on the injuries themselves, but on the effect of the delay in treatment.  See Smith, 316 F.3d at 185-86 ("When the basis for a [deliberate indifference to serious medical need] claim is a temporary delay or interruption in the provision of otherwise adequate medical treatment, it is appropriate to focus on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone in analyzing whether the alleged deprivation is, in 'objective terms, sufficiently serious,' to support an Eighth Amendment claim.").

The plaintiff does not name any health care providers as defendants.  Although he alleges that he received no response to his sick call request, he alleges no facts suggesting that any of the defendants was responsible for the lack of response.  His claim focuses on the failure of defendants Cipolli and Cocchiola to call a code, which presumably would include a response by medical staff and, the fact that the day after the assault, Captain Lewis told the plaintiff to submit a medical request rather than calling the medical unit to arrange immediate treatment.  The plaintiff alleges no facts showing exacerbation of his injuries from the delay.  The court assumes that the plaintiff suffered some pain from his head contusion, but this is insufficient to demonstrate a serious medical need.  See Powell v. Cusimano, 326 F. Supp. 2d 322, (D. Conn. 2004)

(complaints of knee and head pain to support delay of medical treatment claim insufficient to constitute serious medical need).

The court concludes that the plaintiff has not alleged facts stating a plausible claim for deliberate indifference to serious medical needs.

## III.  Conclusion

All claims against the defendants in their official capacities, the request for declaratory relief, the supervisory liability claim against Warden Erfe, the claim for deliberate indifference to serious medical needs, and the state law negligence claim are DISMISSED without prejudice pursuant to 28 U.S.C. § 1915A(b)(1).  The Clerk is directed to terminate Warden Erfe as a defendant.

The case will proceed on the individual capacity claims for failure to protect/deliberate indifference to safety against defendants Lewis, Cipolli, and Cocchiola, and the supervisory liability claim against defendant Lewis.

The court enters the following orders:

(1)  The Clerk shall contact the Department of Correction Office of Legal Affairs to ascertain the service or current work addresses for defendants Lewis, Cipolli, and Cocchiola, mail a waiver of service of process request packet containing the Complaint to each defendant at the address provided within

twenty-one (21) days of this order, and report to the court on the status of those waiver requests on the thirty-fifth day after mailing.  If any defendant fails to return the waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2)   The Clerk shall send the plaintiff a copy of this order.

(3)   The Clerk shall send a courtesy copy of the Complaint and this order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4)   The defendants shall file their response to the Complaint, either an answer or motion to dismiss, within sixty (60) days from the date the waiver forms are sent.  If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They also may include all additional defenses permitted by the Federal Rules.

(5)   Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed within seven months (210 days) from the date of this order.  Discovery requests need not be filed with the court.

18

(6)   All motions for summary judgment shall be filed within eight months (240 days) from the date of this order.

(7)   Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed.  If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8)   If the plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that the plaintiff MUST notify the court.  Failure to do so can result in the dismissal of the case.  The plaintiff must give notice of a new address even if he is incarcerated. The plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice.  It is not enough to just put the new address on a letter without indicating that it is a new address. If the plaintiff has more than one pending case, he should indicate all case numbers in the notification of change of address.  The plaintiff should also notify the defendant or the attorney for the defendants of his new address.

(9)   The plaintiff shall utilize the Prisoner Efiling Program when filing documents with the court.  The plaintiff is advised that the Program may be used only to file documents with the court.  Local court rules provide that discovery requests are not filed with the court.  D. Conn. L. Civ. R. 5(f).

Therefore, discovery requests must be served on defendants'

counsel by regular mail.

     It is so ordered.

     Signed this 10th day of May 2019 at Hartford, Connecticut.


                                              /s/AWT
                                        Alvin W. Thompson
                              United States District Judge